IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

| | | |
|---|---|---|
| RODERICK D. MAXWELL<br>ADC #154561, | *<br>*<br>* | |
| Plaintiff, | * | |
| v. | * | No. 2:25-cv-00045-JJV |
| | * | |
| JOSHUA HAWKINS, Sergeant,<br>East Arkansas Regional Unit, ADC | *<br>* | |
| | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

**I.    INTRODUCTION**

Plaintiff alleges that on February 13, 2025, he twice told Defendant Sergeant Hawkins he was feeling suicidal and needed to speak to his mental health case worker. (Doc. 4.) He says because Defendant Hawkins did not do so, Plaintiff attempted suicide by hanging himself from his cell bars with his laundry bag.

Defendant Hawkins has now filed a Motion for Summary Judgment arguing the claim against him should be dismissed without prejudice because Plaintiff failed to exhaust his available administrative remedies. (Docs. 17-19.) Plaintiff has filed a Response and a Reply, (Docs. 21, 23), and Defendant filed a Reply. (Doc. 22.) After careful consideration and for the following reasons, I find Defendant's Motion should be granted and this case should be dismissed without prejudice.

**II.   SUMMARY JUDGEMENT STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp.*

1

*v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating there is a genuine dispute of material fact for trial. *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

### III.    DISCUSSION

#### A.    Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides, in part, that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89-91 (2006).

The PLRA requires inmates to fully and properly exhaust their administrative remedies as to each claim in the complaint. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."

2

*Jones,* 549 U.S. at 218.  Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility.  *Id.*  The only exception is if administrative remedies are unavailable.  42 U.S.C. § 1997e(a) (prisoners are only required to exhaust "available" administrative remedies).  Administrative remedies are "unavailable" if, for instance: (1) the grievance procedure "operates as a simple dead end;" (2) the procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross v. Blake*, 578 U.S. 632, 642 (2016); *see also Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018).

      B.      **ADC's Grievance Procedure**

Administrative Directive 19-34 ("AD 19-34") establishes a three-step procedure for exhausting administrative remedies in any ADC Unit.  (Doc. 17-2.)  A summary of that procedure is included in the Inmate Handbook, a full copy is available in the prison law library, and many of the requirements are included on the forms themselves.  (*Id.* at § IV(C).)

First, the inmate must attempt informal resolution by submitting a Unit Level Grievance Form to a designated problem solver within fifteen days of the incident.  (*Id.* at § IV(E)(1)).  The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, <u>personnel involved</u> or witnesses, and how the policy or incident affected the inmate submitting the form."  (*Id.* at § IV(E)(2)) (emphasis added.)  Inmates are cautioned a "[g]rievance must <u>specifically name each individual involved</u> in order that a proper investigation and response may be completed" and an inmate who "fails to name all parties during the grievance process may have his or her lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties."  (*Id*. § IV(C)(4)) (emphasis added.)  And the grievance form reminds

3

prisoners to include the "name of personnel involved." (*Id.* at 20.) Second, if informal resolution is unsuccessful or the problem solver does not timely respond, the inmate must file a formal grievance within three working days. (*Id.* § IV(E)(11) and (F)(1).) Third, an inmate who is dissatisfied with the Warden's response, or who does not timely receive a response, must appeal within five working days to the "Chief Deputy/Deputy/Assistant Director." (*Id.* § IV(F)(9)) And the response ends the grievance process. (*Id.*)

### C. Analysis

Grievance Supervisor Terri Grigsby-Brown provided a declaration, under oath, and stated:

> I have reviewed the non-medical grievance appeal files and grievance history for Inmate Roderick Maxwell (ADC #154561). I searched for any exhausted grievances submitted from February 13, 2025, through the date this lawsuit was filed on March 3, 2025. I also searched the same timeframe for any exhausted grievances that specifically named ADC Defendant Joshua Hawkins or referred to the claims in this lawsuit. (A true and accurate copy of Inmate Maxwell's grievance history is attached to ADC Defendant's Motion for Summary Judgment as "Exhibit 3, Roderick Maxwell's Grievance History"). During my review, I found that Inmate Maxwell did not file or exhaust any relevant grievances. (Ex. 3). Specifically, he has not filed any grievances past November 6, 2024. (Ex. 3).

(Doc. 17-1 at 7.)

Exhibit 3 supports Ms. Grigsby-Brown's declaration. Exhibit 3 shows the last grievance Plaintiff filed was EAM24-03498, dated November 6, 2024. (Doc. 17-3 at 2.) That grievance is wholly unrelated as it involved "Clothing-Sheets/Bedding/Footware." (*Id.*)

Mr. Maxwell responds that Ms. Grigsby-Brown is lying and that he has already provided the Court with copies of grievances he submitted. (Doc. 21.) As a part of his original Complaint, Plaintiff submitted three grievance forms. (Doc. 2 at 15-17.) The first one is dated February 13, 2025. (*Id.* at 15.) The only action taken upon this grievance was submission to the problem solver on February 13, 2025. There is no grievance number assigned, and – on its face - this grievance was obviously not exhausted. (*Id.*) The second one appears to be blank. (*Id.* at 16.) And the

4

third, curiously states a date of February 6, 2025, for Step One. As Defendant points out, this date is a week before the alleged incident. So, Mr. Maxwell's claim that Ms. Grigsby-Brown is lying is not well taken.

Plaintiff suggests that the administrative remedies were "unavailable" to him because Defendant Hawkins and others failed to make sure the documents were submitted to the grievance officer. (Doc. 23 at 1.) *See* 42 U.S.C. § 1997e(a) (requiring prisoners to exhaust only "available" administrative remedies); *Ross v. Blake*, 578 U.S. 632, 644 (2016) (administrative remedies are "unavailable" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"). But without more, I am unable to conclude that anyone thwarted Plaintiff's attempt to pursue his administrative remedies. AD 19-34 specifically states that, "if informal resolution is unsuccessful or *the problem solver does not timely respond*, the inmate must file a formal grievance within three working days." (Doc. 17-2 at § IV(E)(11) and (F)(1))(emphasis added.) Plaintiff fails to state any facts to show he was prevented from filing the formal grievance when he did not receive a response from the problem solver. Accordingly, I conclude Defendant Hawkins is entitled to summary judgment because Plaintiff failed to properly exhaust his available administrative remedies. *See Jones,* 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

I realize Plaintiff may perceive this conclusion as an unfairly technical "gotcha" mechanism to keep him out of court. To the contrary, the exhaustion requirement plays a critical role in the remedy process, which the Eighth Circuit has explained as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an

5

inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson*, 340 F.3d at 626-27; *see also Woodford*, 548 U.S. at 89 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures").

## IV.   CONCLUSION

IT IS, THEREFORE, ORDERED THAT:

1. Defendants' Motion for Summary Judgment (Doc. 17) is GRANTED, and Plaintiff's Amended Complaint against Defendant Hawkins is DISMISSED without prejudice.

2. It is certified, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal would not be taken in good faith.

Dated this 14th day of August 2025.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE